UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                        )<br>               Plaintiff,                        )<br>     vs.                                             )<br>                                                        )<br>STACY JOHNSON,                        )<br>                                                        )<br>               Defendant.                    )<br>                                                        ) | Case No.: 2:10-cr-00190-GMN-RJJ<br><br>**ORDER** |

Pending before the Court is the Motion for a New Trial (ECF No. 140) filed by Defendant Stacy Johnson ("Defendant"). Plaintiff United States of America ("Government") filed a Response (ECF No. 141), and Defendant filed a Reply (ECF No. 142).

**I.    BACKGROUND**

From March 27, 2012 through April 3, 2012, the Defendant Stacy Johnson was on trial for Embezzlement from a Union, 29 U.S.C. § 501(c) and Falsification of Financial Records Required to be Kept by a Labor Union, 29 U.S.C. § 439(c). On April 4, 2012, Defendant Stacy Johnson was convicted by a jury on twelve (12) counts of Embezzlement from a Union and three (3) counts of Falsification of Financial Records Required to be Kept by a Labor Union.

During the trial, Jeremy Eichhorn testified for the Government regarding the security of the Union's software systems and the likelihood that the entries in the cashier logs were entered by the Defendant. After he completed his testimony, a juror submitted a question that asked Mr. Eichhorn: "Can any one in the union building access the program with Stacy Johnson privet [sic] code?" In response, Mr. Eichhorn responded, "Yes." After that day of trial, the Government sought clarification and spoke with Mr. Eichhorn. The following morning, the Government requested to recall him as a witness. The Court overruled Defendant's objection and Mr.

Eichhorn proceeded to clarify his answer to the juror question by specifying that only someone that was at a computer with the particular software loaded on it who also had Stacy Johnson's access code could log into the software program that documented the relevant transactions. Mr. Eichhorn further testified that, to his knowledge, the only computers on which this software was loaded were located in the front office, where the Defendant worked. Finally, Mr. Eichhorn specifically stated that this testimony was consistent with his prior testimony and that this testimony had not been influenced by the Assistant United States Attorney.

The Government subsequently called Gennero Joseph, the defendant's ex-husband, who unexpectedly testified that the Defendant never admitted to him that she accepted money to admit people into the Union. The Government proffered that Mr. Joseph had in fact previously told Allen Weiss, a retired District Director of the Department of Labor, that the Defendant had told Mr. Joseph that she had accepted money in order to admit people into the union. For this reason, the Government sought to call Mr. Weiss to impeach the testimony of Mr. Joseph. The Defendant objected. After arguments regarding Mr. Weiss's proposed impeachment testimony, the Court recessed for the day. The following day, the Court heard additional arguments before allowing Mr. Weiss to testify. Upon request by the Defendant, the Court instructed the jury on the limited purpose of Mr. Weiss's testimony.

During Mr. Weiss's testimony he stated that he reviewed his rough notes that he took while interviewing Mr. Joseph and they included a reference to the proffered statements by Mr. Joseph that incriminated the Defendant. Upon Defendant's request, the Government immediately provided those rough notes and the Court recessed to allow Defendant time to review the notes.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

Although determining whether to grant a motion for a new trial is left to the district court's discretion, "it should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel,* 654 F.2d 538, 545 (9th Cir.1981) (citation and internal quotation marks omitted). Moreover, the defendant bears the burden of persuasion. *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989). Such an extraordinary remedy is appropriate, for example, when a court makes an erroneous ruling during the trial and that, but for that erroneous ruling, the outcome of the trial would have been more favorable to the defendant. *See United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978).

### III.   DISCUSSION

#### A.   Procedure

The Court first notes that Local Rules of the United States District Court for the District of Nevada, LCR 47-9, requires that every motion filed in the District of Nevada must include a list of points and authorities. Moreover, the rule explicitly states that "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion." For this reason alone, Defendant's motion for a new trial is denied. Notwithstanding this rule, even when considering the substance of Defendant's motion, it fails to rise to the level necessary to warrant the extraordinary remedy of a new trial.

#### B.   Analysis

##### 1.   Alleged Errors of the Court

The Defendant asserts three primary errors to support her motion for a new trial. First, the Defendant argues that the Government gave inadequate notice that Mr. Weiss would testify and that his testimony exceeded the scope of impeachment testimony and, thus the Court should have excluded Mr. Weiss's testimony. Second, the Defendant argues that the Government violated its obligations under the Jencks Act and under *Brady v. Maryland* ("*Brady*"). Finally, the Defendant argues that the Court erred in permitting the Government to recall Jeremy Eichhorn to clarify his

earlier testimony.  For the following reasons, these arguments fail to meet the Defendant's burden of establishing that justice requires the extraordinary remedy of a new trial.

      **a.    Mr. Weiss's testimony that impeached the testimony of Mr. Joseph was properly admitted as impeachment testimony and not admitted as substantive evidence.**

Both parties correctly note that the government was permitted to impeach its own witness by calling a subsequent government witness. Fed. R. Evid. 607 (stating that "[a]ny party, *including the party that called the witness*, may attack the witness's credibility" (emphasis added)).  One permissible method of impeachment is by introducing a prior inconsistent statement of the witness. *See* Fed. R. Evid. 613(b).  However, when a prior inconsistent statement is admitted for impeachment purposes, it is not automatically admitted as substantive evidence. *United States v. Tavares*, 512 F.2d 872, 874 (9th Cir. 1975).  For this reason, courts often give limiting instructions to the jury that require the jury to restrict its consideration of the prior inconsistent statement to the issue of the impeached witness's credibility. *See Fineberg v. United States*, 393 F.2d 417, 420 (9th Cir. 1968).  When such an instruction is given, "[t]he jury is presumed to have understood and followed the court's instructions and to have given proper weight to th[e] evidence." *Id.* at 420-21.  Finally, there is no requirement in the Federal Rules of Evidence or in the case law of the Ninth Circuit that an opposing party be given advance notice of an impeachment witness. *See* Fed. R. Evid. 607, 613.

Here, the Government would not have been capable of providing earlier notice until it became aware that the witness, Mr. Joseph, would testify "directly contrary to his prior statement to law enforcement." (Response to Motion for New Trial, ECF No. 141.)   The Court also notes that the Defendant was already aware that Mr. Joseph previously made inculpatory statements to a law enforcement officer that were inconsistent with his trial testimony and, thus, could have reasonably anticipated that the government would call the officer, Mr. Weiss, as an impeachment

witness. Moreover, Mr. Weiss did not testify until the morning after the government called him as a witness, thus providing Defendant with adequate time to prepare for cross examination.

      **b. The Government's withholding of Mr. Weiss's hand-written notes did not violate the obligations imposed by the Jencks Act and *Brady*.**

  The Defendant further argued that the government's failure to disclose a collection of Mr. Weiss's "hand-written, rough notes" that were taken during his interview with Mr. Joseph violated the Government's obligation under *Brady* and the Jencks Act. 18 U.S.C. § 3500. (ECF No. 141, 7:2-7:6.) The Jencks Act requires that, once a government witness testifies at trial, the government must "produce upon demand any available statement made by the witness which relates to the subject matter of such witness's testimony at trial." *United States v. Griffin*, 659 F.2d 932, 936 (9th Cir. 1981). However, the Ninth Circuit has recognized that "it is highly unlikely that [an] agent's rough notes could be considered Jencks Act statements." *Id.* at 937. Additionally, these notes were available for use in cross-examining Mr. Weiss and the information contained in the notes was also previously available in the case report.

  Finally, the Defendant has failed to meet the burden of establishing that these notes were subject to *Brady*. In fact, the government was under no *Brady* obligation to provide these before Mr. Weiss's testimony because the notes inculpated the Defendant and, thus *Brady* does not apply. Therefore, the Government's failure to provide these hand-written notes to the Defendant was not an error that would require the extraordinary remedy of a new trial.

      **c. Jeremy Eichhorn was properly recalled as a Government witness to clarify his earlier testimony.**

  Pursuant to Federal Rule of Evidence 611(a), the court may "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth . . . ." When the Government recalled Mr.

Eichhorn as a witness, the additional information merely clarified his earlier responses to the jury questions which had left an erroneous false impression.  On cross-examination, he explained that the Government had not requested that he change his testimony and that this additional testimony was, in fact, consistent with his prior testimony. *See e.g.*, *United States v. Erickson*, 75 F.3d 470, 480 (9th Cir. 1996) (holding that the district court did not abuse its discretion when it allowed a witness to be recalled after that witness had been excused because the additional testimony was relevant and not cumulative).

### 2. Alleged Juror Misconduct

An evidentiary hearing is not mandated each time a defendant alleges juror misconduct. *United States v. Montes*, 628 F.3d 1183, 1187 (9th Cir. 2011) *cert. denied*, 131 S. Ct. 2171 (U.S. 2011) and *cert. denied*, 131 S. Ct. 2468 (U.S. 2011); *see also United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993).  "Rather, in determining whether an evidentiary hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id.* at 1187-88 (concluding that an evidentiary hearing was "unnecessary" in that case).  Even when such a hearing is held, the evidence that is permitted at such a hearing is limited by Federal Rule of Evidence 606(b). *See id.* at 1188.  Rule 606(b) prohibits reliance upon a "juror's mental processes in connection" with a verdict.  It is explicit that jurors "may not be questioned about their deliberative process . . . ." *Id.* (citation omitted).

Here, the statements and testimony relied upon by the Defendant fail to provide sufficient evidence that is admissible under Federal Rule of Evidence 606(b) to warrant an evidentiary hearing on juror misconduct.  First, Marcela Valle's affidavit, when read in full, includes the following. "Mr. Aguilar told me that he knew in his heart Stacy Johnson was guilty. He waited to hear all of the evidence but he kind of knew." (emphasis added). David Groover's affidavit included the following statement, "Mr. Aguilera told me that once the prosecution was through with their witnesses the evidence was pointing to Stacy Johnson beyond a reasonable doubt." The

juror's statements, according to these affidavits, were that (1) he waited to hear all of the evidence; and (2) the Government's evidence proved beyond a reasonable doubt that she was guilty. Additionally, the statements that the jurors made to investigators would be inadmissible under 606(b) because these statements relate to the deliberative process and the effect of evidence on these specific jurors.

### 3. Defendant's attack of the guilty jury verdict fails.

Under Federal Rule of Criminal Procedure 29(c), a defendant may make a motion challenging a guilty jury verdict and asking a court to enter a judgment of acquittal. Fed. R. Crim. P. 29(c)(2). The Supreme Court has created a two-part inquiry for determining whether a jury verdict can withstand a defendant's challenge based on the sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). First, the evidence must be viewed in the light most favorable to the prosecution. *Id.*; *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010). Then, the district court must determine whether, in that light, the evidence "is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 319).

#### a. Counts 15-17

Counts 15-17 alleged violations of 29 U.S.C. § 439(c). An individual violates § 439(c) whenever that person "willfully makes a false entry in or willfully conceals, withholds, or destroys any books, records, reports, or statements required to be kept" under 29 U.S.C. §§ 431-441. 29 U.S.C. § 439(c). Specifically, § 431(b) requires that unions file an "annual financial report" that lists, among other things, the "receipts of any kind" and any "other direct or indirect disbursements . . . to each employee . . . ."

At trial, the Government presented evidence that the Defendant withheld or destroyed copies of the receipts for $590 provided to union members for the $590 dues they paid and that she created false receipts for $90 in order to conceal her actions (theft of $500 for each payment).

Thus, the jury heard evidence that the Defendant destroyed union records ($590 receipt) and created fraudulent union records ($90 receipt) that were required to be part of the annual financial report. When viewing this evidence in the light most favorable to the Government, the evidence was adequate to allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. The Defendant failed to meet its burden to challenge the guilty verdict. Therefore, the Defendant's motion for acquittal or new trial is denied.

### b. The absence of an in-court identification is insufficient to overcome the guilty jury verdict.

A guilty jury verdict can still be proper, even if it relies solely on circumstantial evidence and reasonable inferences drawn therefrom. *United States v. Ramirez-Rodriquez*, 552, F.2d 883, 884 (9th Cir. 1977) (citations omitted) (stating that "[c]ircumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and circumstantial evidence can be used to prove any fact").

Here, the Government introduced evidence at trial that the cash was paid by union members to an African-American female cashier and the Defendant was the only African-American woman that worked as a cashier. Moreover, the Defendant was also the only African-American woman that worked in the front office, where the computers were located within which these transactions took place. From this evidence, despite the lack of in-court identification of the Defendant, the jury was permitted to consider this circumstantial evidence and make reasonable inferences therefrom.

For these reasons, Defendant's argument that the guilty jury verdict should be set aside due to the Government's failure to provide in-court identification fails. Because the Defendant has failed to satisfy her burden under Federal Rules of Criminal Procedure 29(c) or 33(b), her motion for acquittal or new trial is denied.

/ / /

## III. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for a New Trial (ECF No. 140) is **DENIED**.

**DATED** this 22nd day of August, 2012.

_____
Gloria M. Navarro
United States District Judge